UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**THE MARCUS CORPORATION,**
**MARCUS INVESTMENTS,** and
**DIRK STALLMAN,**

    Plaintiffs,

    v.                                                      Case No. 25-CV-1131-SCD

**MKD INVESTMENT HOLDINGS, LLC,**

    Defendant.

---

DECISION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS COMPLAINT

---

    This diversity action arises from franchise agreements between franchisor Verlo Mattress, where Plaintiff Dirk Stallman had been the President, and franchisee MKD Investment Holdings, the defendant. The franchise agreements included arbitration provisions. In December 2024, MKD filed a demand for arbitration against Verlo Mattress, Stallman, Marcus Corporation, and Marcus Investments for violations of Wisconsin and Texas statutes, negligent misrepresentation, and fraudulent inducement. Stallman, Marcus Corp., and Marcus Investments objected to arbitration because they were not signatories to the franchise agreements, therefore they did not agree to arbitrate. (It's not clear from the complaint how Marcus Corp. or Marcus Investments are involved, but that's the thrust of the underlying dispute.) The American Arbitration Association appointed an arbitrator to determine the limited issue of arbitrability, and the arbitrator found that the plaintiffs were properly joined in the arbitration.

Stallman, Marcus Corp., and Marcus Investments sued MKD in federal court under the Declaratory Judgment Act seeking a declaration that they are not subject to the Franchise Agreements' arbitration provisions and are not obligated to arbitrate with MKD. MKD has moved to dismiss the complaint under Rule 12(b)(6). Because the allegations in the complaint establish a plausible claim for declaratory relief, I will deny MKD's motion to dismiss.

## BACKGROUND

I take these facts from the complaint.[1] Stallman, domiciled in Wisconsin, was the President of Verlo Mattress from September 2020 until March 2025. Compl. ¶¶ 4, 14, ECF No. 1. Allegedly acting in that capacity, Stallman signed franchise agreements with MKD in July 2022 and December 2023. *See id.* ¶¶ 10, 15–16. MKD, domiciled in Texas, agreed to open Verlo stores in Texas. *See id.* ¶¶ 5, 12. The franchise agreements included arbitration provisions. *Id.* ¶ 13.

Marcus Corporation is a publicly held real estate company transacting business in Milwaukee (Wisconsin). *Id.* ¶¶ 20–21. Marcus Investments is a privately held investment company transacting business in Milwaukee (Wisconsin). *Id.* ¶¶ 20, 22.

On December 19, 2024, MKD filed a demand for arbitration with the AAA against Verlo, Stallman, Marcus Corp., and Marcus Investments. *Id.* ¶ 27. MKD alleged violations of Wisconsin franchise law, Wisconsin and Texas deceptive trade practices laws, negligent misrepresentation, and fraudulent inducement. *Id.* On January 6, 2025, Stallman, Marcus Corp., and Marcus Investments objected to arbitrability on the basis that they weren't parties to the franchise agreements and therefore hadn't agreed to arbitration. *See id.* ¶ 28. The AAA

---

[1] MKD presented additional material with its motion to dismiss, specifically the franchise agreement, plaintiffs' objection to arbitrability filed in the arbitration proceeding, and the arbitrator's order. *See* ECF No. 16 Exs. 1, 2, 3. These materials are outside the pleadings and not properly before me in a motion brought under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(d).

appointed an arbitrator for the limited purpose of deciding arbitrability. *Id.* ¶ 29. The arbitrator issued an order that those parties were properly joined in the arbitration. *Id.*

In August 2025, Stallman, Marcus Corp, and Marcus Investments filed suit in federal court. *See id.* at 1. Plaintiffs brought one count under the Declaratory Judgment Act seeking a declaration that they: (1) are not parties to the Franchise Agreements; (2) are not subject to the Franchise Agreements' arbitration provisions; and (3) are not obligated to arbitrate with MKD. *Id.* at 5–6. The matter was randomly assigned to me, and all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4 & 7. On October 27, 2025, MKD moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* ECF Nos. 14, 15, 16. Plaintiffs filed a brief in opposition, *see* ECF No. 17, and MKD replied, *see* ECF No. 21.

## MOTION TO DISMISS STANDARD

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss for failure to state a claim, the . . . complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 821 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a Rule 12(b)(6) motion, courts must "accept the well-pleaded facts in the complaint as true and draw reasonable inferences in the plaintiff's favor." *Bronson v. Ann & Robert H. Lurie Child.'s Hosp.*, 69 F.4th 437, 448 (7th Cir. 2023) (citing *KAP Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022)).

**DISCUSSION**

MKD presents four arguments in support of its motion to dismiss. First, the court should exercise discretion to decline considering declaratory relief. Second, a party can't seek judicial review of an intermediate arbitration decision. Third, the arbitration provisions incorporated AAA rules, and those rules delegate questions of arbitrability to arbitration. Fourth, plaintiffs waived their arguments by participating in arbitration. *See* Def.'s Br., ECF No. 15; Def.'s Reply, ECF No. 21.

**I.  The court shall exercise jurisdiction over declaratory relief.**

The Declaratory Judgment Act permits district courts, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]he Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). MKD argues that this court should decline discretionary jurisdiction to allow arbitration to proceed. *See* Def.'s Reply 6, ECF No. 21 (citing *Wilton*, 515 U.S. at 286–87).

The Seventh Circuit has relied on the following factors to determine whether a district court should exercise jurisdiction over a declaratory judgment issue:

> (1) whether the judgment would settle the controversy;
>
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994). Here, all of these factors favor the plaintiffs.

First and second, declaratory judgment would settle the controversy and serve a useful purpose in clarifying the legal relations at issue. As in *Maximus, Inc. v. Tyler*, "the parties dispute whether the Agreement memorializes [plaintiffs'] consent to arbitration. Because . . . courts do not enforce arbitral awards against parties that never consented to arbitration, resolving whether [plaintiffs] ever consented to arbitration would clarify whether it must satisfy any arbitral award." *Maximus, Inc. v. Tyler*, 764 F. Supp. 3d 581, 586 (E.D. Mich. Jan. 24, 2025) (judicial review of arbitrability issue prior to final arbitration hearing). Third, there is no evidence here that plaintiffs initiated this action for the purpose of procedural fencing. Courts are hesitant to impute an improper motive without evidence. *See id.* Fourth, no Wisconsin court has considered whether plaintiffs are subject to the arbitration provision, so declaratory relief would not improperly interfere with state-court litigation or authority.

Fifth, arbitration is not clearly better than any other forum if plaintiffs did not actually agree to submit this dispute to arbitration. MKD argues that plaintiffs have an adequate remedy in challenging the final arbitration award, and this process would support state and federal policies promoting arbitration. *See* Def.'s Reply 6. This remedy would only be adequate if plaintiffs had agreed to arbitrate. "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). "The basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes, but to ensure that commercial arbitration

agreements, like other contracts, are enforced according to their terms, and according to the intentions of the parties." *Id.* at 947 (citation modified). So, absent a clear agreement to arbitrate, the fifth factor favors the plaintiffs. I therefore conclude that it is wholly appropriate to adjudicate this dispute.

**II.      The court decides whether a non-signatory is subject to an arbitration provision.**

MKD also argues that courts shouldn't review intermediate arbitration decisions like the one at issue here. But the case law undercuts MKD's argument entirely. Whether a non-signatory agreed to submit a question of arbitrability to an arbitrator is an issue for the court to resolve.

Generally, "intermediate" decisions by an arbitration panel are not reviewable. *See Marlowe v. IDS Prop. Cas. Ins. Co.*, 2012 WI App 51, ¶ 18, 340 Wis. 2d 594, 811 N.W.2d 894, *aff'd as modified and remanded*, 2013 WI 29, 346 Wis. 2d 450, 828 N.W.2d 812; *see also Publicis Commc'ns v. True North Commc'ns*, 206 F.3d 725, 728–29 (7th Cir. 2000) (arbitration panel's decision on a discovery issue was final, and therefore reviewable, because that issue was "the whole ball of wax."). On the other hand, "arbitrability" issues are for judicial determination unless the parties clearly and unmistakably agreed otherwise. *First Options*, 514 U.S. at 943.

Whether a non-signatory agreed to arbitrate a dispute is a question of arbitrability. "The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Whitter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)) (citing *First Options*, 514 U.S. at 944). Without an arbitration agreement, "questions of arbitrability could hardly have been clearly and unmistakably given over to an arbitrator." *Oeschger v. GeneThera,*

*Inc.*, 386 F. Supp. 3d 376, 383 (D. Vt. 2019) (quoting *VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 325 n.2 (2d Cir. 2013)) (citation modified); *see also Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1128 (10th Cir. 2018). Put simply, "[w]hen the signatory seeks to compel a non-signatory to submit the issue of arbitrability to arbitration, it is the court—not the arbitrators—which resolves the issue of arbitrability." *Oeschger*, 386 F. Supp. 3d at 382.

MKD points out that the arbitration provisions incorporate the AAA rules, which delegate questions of arbitrability to arbitration. Even so, this argument again begs the question of arbitrability itself—if the AAA rules provided the sole answer to that question, then *any* party, no matter how remote, may be dragged into arbitration simply based on the say-so of a contract the party never saw, much less agreed to. The point is that an arbitration provision can't be enforced against the plaintiffs unless they actually agreed to it. *CCC Info. Servs. v. Tractable Inc.*, Case No. 18 C 7246, 2019 U.S. Dist. LEXIS 76767, 2019 WL 2011092, at *5–6, *aff'd sub nom. CCC Intelligent Sols. Inc. v. Tractable Inc.*, 36 F.4th 721 (7th Cir. 2022) ("Although the arbitration clause delegates the issues of existence and validity to the arbitrator, the delegation clause cannot be enforced against plaintiff unless plaintiff agreed to arbitrate disputes with Tractable. Here . . . the issue is not the effect of a contractual provision to which the parties agreed. The issue is whether an agreement between plaintiff and Tractable exists at all. That issue is for the court to decide.").

Here, the ultimate issue is whether the plaintiffs agreed to arbitrate with MKD. That dispute "can't logically be resolved by the arbitrators." *Id.* at *5–6 (quoting *Sphere Drake Ins. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001)). Because Stallman, Marcus Corp., and Marcus Investments didn't sign the franchise agreements, they did not "clearly and

unmistakably" agree to delegate the question of arbitrability to an arbitrator. In sum, it is appropriate for the court to decide whether Stallman, Marcus Corp., and Marcus Investments agreed to submit the question of arbitrability to arbitration.

### III. Plaintiffs did not waive judicial review.

Finally, MKD argues that the plaintiffs waived the right to judicial review by failing to raise these arguments with the arbitrator, or by participating in the arbitration when they objected to arbitrability. Def.'s Reply 4. In MKD's view, it's too late now for the plaintiffs to protest. Plaintiffs counter that they *did* object to the arbitrator's authority to decide this issue and therefore haven't waived anything. Pls.' Br. 7.[2]

MKD exaggerates what actually happened here. In its view, the plaintiffs are trying to obtain the proverbial second bite at the apple—they willingly participated in arbitration yet now, having lost, they seek to have a court undo the very decision they agreed to arbitrate. It's true that courts frown on gamesmanship, or what Judge Posner described as "playing heads I win, tails you lose." *Roughneck Concrete Drilling & Sawing Co. v. Plumbers' Pension Fund, Loc. 130, UA*, 640 F.3d 761, 767 (7th Cir. 2011). In *Roughneck,* the district court chastised the plaintiff for going through mediation and then, having lost, challenging the arbitrability of the dispute in federal court. But the Seventh Circuit reversed, finding that Roughneck had sufficiently challenged arbitrability during the arbitration proceedings and had not, therefore, waived the issue, even if it had admittedly "dawdled" in raising the matter. *Id.* The Circuit contrasted that result with *Nghiem v. NEC Elec., Inc.,* a Ninth Circuit case where the plaintiff had "initiated the arbitration, attended the hearings with representation, presented evidence, and submitted

---

[2] Consideration of what happened during the arbitration involves facts outside the pleadings. In denying MKD's motion to dismiss, I am simply relying on what appears to be an accepted description of what happened during the arbitration set forth in the briefs.

8

Case 2:25-cv-01131-SCD   Filed 01/26/26   Page 8 of 10   Document 22

a closing brief of fifty pages." 25 F.3d 1437, 1440 (9th Cir. 1994). Having participated so materially in the arbitration proceedings, Nghiem could not later challenge arbitrability in court. "Once a claimant submits to the authority of the arbitrator and pursues arbitration, he cannot suddenly change his mind and assert lack of authority. Nghiem is bound by the arbitrator's decision." *Id.*

This case is much more like *Roughneck* than *Nghiem.* The plaintiffs did not initiate the arbitration proceedings—in fact, they argued the arbitrator had no jurisdiction over the dispute at all. They did not proceed to the merits and lose; instead, they merely arbitrated the underlying question of arbitrability itself. And nothing on the merits has occurred yet. The Supreme Court has made the same point: *First Options* makes clear that participating in an arbitration proceeding by objecting to arbitrability does not make arbitrator's decision on that issue binding. "[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.*, a willingness to be effectively bound by the arbitrator's decision on that point. To the contrary, insofar as the Kaplans were forcefully objecting to the arbitrators deciding their dispute with First Options, one naturally would think that they did *not* want the arbitrators to have binding authority over them." *First Options*, 514 U.S. at 946 (emphasis in original). Here, as in *First Options*, the plaintiffs' minimal participation in the arbitration did not waive independent review by the courts. *See id.* at 947. In sum, it's not as though the plaintiffs have lost and are now seeking a second forum to re-litigate their dispute. The question their complaint raises is timely and appropriately considered by this court.

## CONCLUSION

Stallman, Marcus Corp., and Marcus Investments raised a plausible claim for declaratory relief in their complaint. For all the foregoing reasons, the court **DENIES** MKD's motion to dismiss the complaint, ECF No. 14. The clerk will schedule the case for a Rule 16 conference.

**SO ORDERED** this 26th day of January, 2026.

_____
STEPHEN C. DRIES
United States Magistrate Judge